CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Howard McDougall, trustee,

v.

GATEWAY FOODS OF TWIN PORTS, INC.

No. 93 C 523.

United States District Court, N.D. Illinois, Eastern Division.

May 11, 1994.

---

Albert M. Madden, Margaret Mary Fahrenbach, Robert Anthony Coco, Patrick J. Connor, Central States Law Dept., Rosemont, IL, for plaintiff and trustee.

Jeffrey R. Schmidt, Thomas J. White, Rider, Bennet, Egan & Arundel, Minneapolis, MN, for defendant.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund (the Fund) and its trustee, Howard McDougall, bring this action pursuant to § 502 of the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1001 *et seq.* They seek recovery from defendant Gateway Foods of Twin Ports (Gateway Foods) for contributions and interest allegedly owed the Fund for the period February 1, 1989 through December 30, 1989. Plaintiffs and defendant now move for summary judgment and, for reasons stated below, both motions are denied.

### FACTS

The Fund provides benefits for employees of various employers that contribute to it pursuant to their collective bargaining agreements. It operates on a self-reporting system in which employers identify and provide work histories of employees for whom they owe contributions. The Fund bills employers based on their reports. However, the Pension Fund Trust Agreement requires employers to give trustees access to their records, thereby allowing trustees to verify their reports.

Gateway Foods, an employer participating in the Fund, entered into a collective bargaining agreement (the agreement) with Local 346 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT) that went into effect on February 1, 1989. Under the agreement Gateway Foods contributes to the Fund for covered employees. The agreement contains references to casual, probationary and regular employees. Plaintiffs contend that when they audited Gateway Foods' reports to the Fund they discovered an improper failure to contribute to the Fund for certain employees between February 1, 1989 and December 30, 1989. Gateway Foods says it was not required to contribute for the employees in question because they were probationary employees.

## DISCUSSION

Article 29 of the collective bargaining agreement provides:

Effective February 1, 1989, the Employer shall contribute to [the Fund] ... for each employee covered by this Agreement who has been on the payroll thirty (30) days or more, except as provided in this Agreement.

Article 29 does not cover employees who work "temporarily or in cases of emergency". Article 15 creates another exception to Gateway Foods' contribution requirement: it need not make pension contributions on behalf of casual employees. The Fund does not allege that Gateway Foods owes contributions for employees who were temporary, emergency or casual employees during the period in question. Rather, the employees in question were probationary employees, as defined in Article 15 § 1.C.:

All employees shall be on probation for the first 480 straight-time working hours that they work for the employer provided such hours must be completed within ninety calendar days, beginning with the first day worked by the new employee involved.

The section further provides:

Employees on probation shall not receive holiday pay. During this period of probation employees shall acquire no seniority or re-employment rights and may be laid off or discharged at the Employer's discretion. After said period of probation, employees, if retained by Employer, shall become regular employees and shall be placed on the seniority list ... and shall become a member of the union ...

Unlike casual employees, there is no provision excluding probationary employees from Gateway Foods' obligation to contribute to the Fund.

Plaintiffs argue that because probationary employees are employees covered in the agreement, Gateway Foods must contribute to the Fund on their behalf once they have been on the payroll for 30 days or more. They point out that while the agreement explicitly excludes casual employees from the contribution obligation, and excludes probationary employees from other benefits, it does not explicitly exclude probationary employees from the contribution obligation.

Gateway Foods responds that the parties did not intend to include probationary employees in the contribution obligation. It argues that "each employee covered by this Agreement" is ambiguous as to whether it includes probationary employees because "employee" is used differently throughout the agreement. According to Gateway Foods, the court should therefore consider extrinsic evidence showing that the parties did not intend to obligate Gateway Foods to contribute to the Fund on behalf of probationary employees.

On "a motion for summary judgment requiring interpretation of a contract, the district court must determine (1) if the contract is ambiguous or unambiguous and (2) if it is ambiguous, whether after consideration of the extrinsic evidence, there are any triable issues of fact." *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir.1993). " 'A term is ambiguous if it is subject to reasonable alternative interpretations.' " *Id., quoting Taylor v. Continental Group*, 933 F.2d 1227, 1232 (3rd Cir.1991). A contract may be either internally ambiguous—"internally inconsistent or unclear"—or externally ambiguous, if inquiry "beyond merely studying the words of the document ... reveals a genuine dispute about the contract's meaning." *R.T.*

*Hepworth Co. v. Dependable Ins. Co.,* 997 F.2d 315, 319 (7th Cir.1993).

Gateway Foods argues that "employee" is ambiguous because the agreement sometimes uses "employee" in a provision, but elsewhere limits which employees the provision includes. Article 15 § C grants seniority rights to regular employees only, while 15 § H addresses the loss of seniority rights and refers to employees without qualification. Article 11 provides that "[n]otwithstanding anything herein contained, it is agreed that in the event any Employer is delinquent ... in ... its payment of premiums on insurance carried for the benefit of employees or contributions to Pension Fund or Funds created under this contract ... the employees" can take action. Under Article 28, Gateway Foods must contribute to the health and welfare premiums "for each week on each regular employee employed during the week," but not for casual or emergency employees.

In Article 5, on certain conditions, Gateway Foods agrees to grant time off without loss of seniority rights to "any employee," and to grant a leave of absence without loss of seniority rights to "any employee" who arranges to continue Health and Welfare and Pension payments. However, under Articles 15 § C and 28, employees acquire seniority rights only after they become regular employees, and Gateway Foods must contribute to the health and welfare premiums only for regular employees.

Article 2 requires all employees to be union members and pay dues. Article 15, though, provides that when an employee becomes a regular employee "he shall become a member of the union" and have a duty to pay dues under Article 2. Article 17 precludes Gateway Foods from discharging or suspending "any employee without just cause," but Article 15 grants Gateway Foods the discretion to lay off or discharge probationary employees.

Gateway Foods argues that because Articles 15 § C, 11, 5, 2 and 17 use "employee" generally, even though they apply only to regular employees pursuant to Articles 15 and 28, "employee" in Article 29 is ambiguous as to which employees it includes.

*Teamsters Ind. Emp. Welfare Fund v. Rolls–Royce,* 989 F.2d 132, 136 (3rd Cir.1993), presented the Third Circuit with a question of interpretation similar to the one in this case. Several provisions in the disputed bargaining agreement distinguished between probationary and regular employees. *Id.* However, one provision referred to "any employee" in discussing seniority rights, even though only regular employees achieved seniority. *Id.* Another permitted the inference that the agreement only covered regular employees. *Id.* The Third Circuit held:

> "Because some provisions in the collective bargaining agreement specifically use the terms 'probationary' or 'regular' employees, while other clauses utilize the broad term 'employee' yet necessarily apply only to regular employees, we find the term 'each employee' ... to be ambiguous."

*Id.*

■ This court is not convinced by the reasoning in *Rolls–Royce.* When the agreement in this case utilizes the broad term "employee" in provisions that apply only to regular employees, it so indicates. It does not follow that because certain provisions use "employee" but the agreement elsewhere limits their application to regular employees, "employee" in Article 29 might be limited in its application to regular employees. The agreement obligates Gateway Foods to contribute to the Fund "for each employee covered by this Agreement," which includes probationary employees, "except as provided in this Agreement." The agreement does not limit the applicability of Article 29 to regular employees, while it excludes temporary, emergency and casual employees from the contribution obligation. The agreement is therefore not internally ambiguous.

■ Gateway Foods provides extrinsic evidence to show it is not obligated to contribute to the Fund for probationary employees. Because of the conclusion above, that evidence does not warrant judgment in Gateway Foods' favor as a matter of law. However, extrinsic evidence can be considered as external evidence of a contract's ambiguity. *See R.T. Hepworth,* 997 F.2d at 319. Gateway Foods points to the affidavit of Mark

Schneider, its counsel, in which he states that the parties to the agreement did not intend to obligate Gateway Foods to make pension contributions for probationary employees. Gateway Foods also provides a letter written by IBT's Roy Niemi to Schneider, apparently following a conversation they had, in which Niemi agrees with Schneider's "recollection and interpretation" of the parties' intent. Finally, Gateway Foods points to the agreement's predecessor agreements, pursuant to which Gateway Foods says it did not make Fund contributions for probationary employees, and during which time the Fund did not protest Gateway Foods' failure to do so. *Contrast Rolls–Royce*, 989 F.2d at 136 (for over five years, under self-same agreement being disputed, defendant was never asked to make, and never made, a single pension fund contribution for a probationary employee).

Considering the vested interests of Schneider and Niemi in how they recollect the parties' intent, and Gateway Foods' reliance on past agreements and conduct under those agreements to interpret a current agreement which is internally consistent and clear, it is barely arguable that Gateway Foods' evidence "reveals a genuine dispute about the contract's meaning." *R.T. Hepworth*, 997 F.2d at 319. For now, though, in light of the evidence presented by Gateway Foods that is extrinsic to the agreement, plaintiffs' motion for summary judgment is denied.

### CONCLUSION

Defendant's motion for summary judgment is denied, and plaintiffs' motion for summary judgment is denied for now.